AO 91 (Rev. 11/11)   Criminal Complaint    (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
3/9/21

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| DAVID JOSEPH CARTER II | ) | 3:21MJ83 |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 7, 2021__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Threats or Violence. |
| 18 U.S.C. § 924(c)(1)(A)(ii) | Using and Carrying a Firearm During and in Relation to a Crime of Violence. |

This criminal complaint is based on these facts:

See affidavit of Matthew Heiser, ATF

☑ Continued on the attached sheet.

MATTHEW HEISER (Af
*Complainant's signature*

Matthew Heiser, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephone__ *(specify reliable electronic means)*.

Date: 3/9/21

*ature*

U.S. Magistrate Judge
*and title*

City and state:

## AFFIDAVIT

Your Affiant, Matthew Heiser, being duly sworn, states as follows:

### I.

### INTRODUCTION

1. I have been employed by the city of Dayton Police Department for 19 years. I have been sworn as a task force officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since May of 2020. I am currently assigned to a Violent Offender Crime Task Force that investigates criminal organizations in Southern Judicial District of Ohio. I have been involved in numerous investigations of Federal firearms and narcotic violations. These investigations have resulted in the arrest and conviction of criminal defendants.

### II.

### PURPOSE OF AFFIDAVIT

2. This Affidavit is prepared in support of a criminal complaint which seeks the arrest of **David Joseph CARTER II** (hereinafter referred to as "**CARTER**"). I make this affidavit based upon my personal knowledge and participation in the subject investigation. My involvement in subject case has included reviewing witness interviews and reports of investigation, engaging in discussions with other law enforcement agents knowledgeable of the facts and circumstances of this case, and other information gained through my prior training and experience.

3. The information outlined below does not reflect all the factual details I am privy to relating to the subject investigation, but rather is provided for the limited purpose of establishing probable cause to believe that on or about March 7, 2021, in the Southern District of

Ohio, **CARTER** committed the offenses of Interference with Commerce by Threats or Violence, in violation of 18 U.S. Code § 1951(a) and Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

### III.

### FACTUAL SUMMARY OF PROBABLE CAUSE

4. On or about March 7, 2021, at approximately 1845 hours Dayton Police Department responded to an armed robbery that had occurred at Dollar General, located at 445 Salem Avenue, Dayton, Ohio 45406. Law enforcement conducted a review of the surveillance footage from the armed robbery and confirmed that at approximately 1841 hours a tall, skinny black male approximately 6'1" to 6'3", approximately 20 years of age, wearing a red headband/toboggan, gray face mask, black gloves, red jacket, black Nike Shoes, and black pants, herein after referred to as (SUSPECT-1), entered the store. SUSPECT-1 approached the front counter and brandished a suspected firearm at the clerk and demanded the money in the register. SUSPECT-1 then fled the store on foot with approximately $471.00 in United States currency. As such, SUSPECT-1 obtained property from another without that person's consent. SUSPECT-1 did so by wrongful use of actual or threatened force, violence, or fear. And as a result of the SUSPECT-1's actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

5. Surveillance footage recovered and reviewed from outside and the surrounding area of the Dollar General provided a timeframe and direction of travel for SUSPECT-1 after the armed robbery. Upon exiting the store, SUSPECT-1 headed southeast towards the intersection of Federal Street and Central Avenue. At approximately 1845 hours SUSPECT-1 was observed running southeast on Central Avenue. At approximately 1846 hours, SUSPECT-1 had been

observed running down the alleyway in between Grafton Avenue and Central Avenue. Moments later SUSPECT-1 was observed taking off his outer red jacket and tossing it over an approximate six-foot privacy fence before entering the apartment complex of 111 Grafton Avenue.

6. Law enforcement met with the landlord/manager of the complex at 111 Grafton Avenue, who provided information that an individual matching the physical description of SUSPECT-1 currently stayed in apartment number 310. Law enforcement contacted a black male matching the physical description of SUSPECT-1 and wearing similar style black pants, later identified as **CARTER**. **CARTER** was detained by law enforcement and a protective sweep for officer safety was conducted in the immediate vicinity of **CARTER**. In plain view, law enforcement observed black Nike shoes matching those worn by SUSPECT-1 during the armed robbery.

7. Dayton Police Department secured the apartment and a state search warrant was applied for and issued by the Montgomery County Common Pleas Court. A search of the residence revealed items of clothing like that utilized by SUSPECT-1 during the armed robbery to include: a red headband, a gray facemask, black gloves, and United States currency concealed behind a picture frame on the wall.

8. **CARTER** was transported to the Dayton Police Department Safety Building, located at 335 West 3rd Street, Dayton, Ohio for questioning. Dayton Police Department Detectives Nathan Curley and ATF Special Agent Timur Housum conducted an interview of **CARTER**. The interview was audio and video recorded. Prior to the interview Det. Curley administered *Miranda* warning via recitation of Dayton Police Department Pre-Interview Form Miranda Warning of Right Waiver. **CARTER** stated he understood his rights and voluntarily waived his rights. Later Detective Justin Ellis and ATF Special Agent Timur Housum went back

into the interview room and re-advised **CARTER** of his *Miranda* Rights. **CARTER** agreed to speak with law enforcement again. It was at this point that he admitted to the instant offense and four other robberies that occurred at the same Dollar General on or about the following dates: February 3, 8, 13, and 28, 2021. Like the instant offense, **CARTER** brandished a firearm during the other four robberies. This interview where **CARTER** admitted to the instant offense and the four other robberies was audio recorded.

9. **CARTER** further identified himself as SUSPECT-1 and stated that the firearm he was in possession of during the armed robbery was a .40 caliber pistol. **CARTER** also stated that he had stashed the firearm in the apartment complex on the seventh floor behind some steps after he saw that law enforcement had approached the complex. Upon the physical description of where the firearm was stashed, law enforcement located a .40 caliber pistol hidden underneath the steps of a side room. The firearm is further described as a Smith and Wesson, model SW40VE, .40 caliber pistol, bearing serial number PBN0087, with 15 live rounds in the magazine. **CARTER** went on to state clothing recovered by law enforcement, which included a red/maroon jacket, black Nike shoes, gray mask black gloves, and red head band, were used by him during the commission of the armed robbery.

10. Your affiant contacted Dollar General Theft Loss, who provided information regarding shipments of Frito-Lay products to the specific store robbed by **CARTER**. Dollar General shipping invoices showed that on March 1, 2021 they received delivery of Frito-Lay products from a regional distribution center for Frito Lay located at 75 Remittance Drive, Suite 1217 in Chicago, Illinois. This information shows that property of Dollar General, commercially packaged objects, traveled in interstate commerce during distribution to the point of commercial sale. Therefore, the Dollar General location affected by CARTER's actions operate in and effect

interstate commerce. As a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

11. Based on the aforementioned facts, Affiant asserts that there is probable cause to believe that on or about March 7, 2021, **CARTER** committed the offenses of Interference with Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951(a), and Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and that said offenses occurred within the Southern Judicial District of Ohio.

MATTHEW HEISER (Af
_____
Matthew Heiser
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on this 9th day of March 2021.

_____
Sharon L. Ovington
United States Magistrate Judge